NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN CUEVAS,<br><br>          Plaintiff,<br><br>v.<br><br>THE STATE OF NEW JERSEY, CITY OF JERSEY CITY, and THE ADMINISTRATIVE OFFICE OF THE COURTS OF NEW JERSEY,<br><br>          Defendants. | Civil Action No. 20-17555 (SDW)(LDW)<br><br>OPINION<br><br><br>May 20, 2021 |

**WIGENTON**, District Judge.

Before this Court are Defendants the State of New Jersey and the Administrative Office of the Courts of New Jersey's (the "State Defendants") Motion to Dismiss (D.E. 11-1) and Defendant the City of Jersey City's ("Jersey City") (collectively, "Defendants") Motion to Dismiss (D.E. 13-1) Plaintiff Ryan Cuevas's ("Plaintiff") Complaint (D.E. 1 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the State Defendants' Motion is **GRANTED**, and Jersey City's Motion is **DENIED**.

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a deaf individual who communicates primarily in American Sign Language ("ASL"). (Compl. ¶ 11.) On August 22, 2019, Plaintiff received a parking ticket and a summons to appear before the Municipal Court of New Jersey in Jersey City ("Municipal Court"). (*Id.* ¶

12.) On November 20, 2019, Plaintiff received a mail notice that his hearing had been rescheduled to January 22, 2020. (*Id.* ¶ 13.) In advance of this hearing, Plaintiff made a payment on the parking ticket and called the Municipal Court to request an ASL interpreter. (*Id.* ¶¶ 14–15.) Plaintiff was told that he would "need to appear in court on January 22, 2020 and request an interpreter." (*Id.* ¶ 15.) On the scheduled date, Plaintiff appeared for his arraignment and no interpreter was provided by the Court. (*Id.* ¶ 17.) As a result, the hearing was rescheduled to March 4, 2020. (*Id.*).

A week prior, Plaintiff had received a letter stating that the Motor Vehicle Commission ("MVC") intended to suspend his registration unless a $100 "restoration fee" was paid, because he had "failed to present proof of liability insurance." (*Id.* ¶ 16.) In early February, Plaintiff returned to the Municipal Court to request reinstatement of his license pending his postponed arraignment hearing. (*Id.* ¶ 19.) Again, he was not provided an interpreter. (*Id.*).

Over the next few months, Plaintiff had additional calls (conducted through a Video Relay Service) with the Municipal Court to attempt to understand what an arraignment was, why no interpreter had been provided to him, and how to ensure an interpreter would be present at his rescheduled arraignment. (*Id.* ¶¶ 20–22.) On one such call, Plaintiff was told that "he must show up . . . to ask the Judge for an ASL interpreter,"[1] and that he "cannot request an interpreter in advance, [because] only the Judge can request an interpreter." (*Id.* ¶¶ 21–22.) At the hearing on March 4, 2020, after waiting for an hour, Plaintiff was passed a note that stated "We do not have a sign language inter. Sorry we must reschedule." (*Id.* ¶ 22.)

Due to the COVID-19 pandemic, Plaintiff then endured months of additional delays. (*Id.* ¶¶ 22–24.) At a virtual hearing on August 5, 2020, Plaintiff was eventually able to access an ASL

---

[1] The Complaint references both a March 4, 2020 and April 1, 2020 date but it is unclear if there is a typo, or if two dates were provided to Plaintiff by the Municipal Court. (*See, e.g.*, Compl. ¶¶ 21 (discussing the "upcoming March 4, 2020 hearing" and stating that Plaintiff "must show up on April 1, 2020"); 23 (stating that the "April 1, 2020 hearing was postponed to May 6, 2020").)

interpreter, and the judge presiding over the hearing "waived Plaintiff's restoration fees and reinstated the suspended license." (*Id*. ¶¶ 26–27.) It took additional phone calls and visits to courts and agencies to lift the suspension, clear the restoration fee, and reinstate the license. (*Id.* ¶¶ 28–30.)

On December 1, 2020, Plaintiff brought this action. (*Id*.) The Complaint alleges the following claims: (I) Violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. (all Defendants); (II) Violations of Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 (all Defendants); and (III) Violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5–1, et seq. (Jersey City). (*Id.* ¶¶ 40–72.) On February 5, 2021, the State Defendants moved to dismiss pursuant to Rule 12(b)(6), arguing that (1) the Municipal Court is not a program provided by the state, and, therefore, the State Defendants are not responsible for providing interpreters and (2) the Municipal Court's employees are not state employees. (D.E. 11-1.) On February 26, 2021, Jersey City also moved to dismiss the Complaint pursuant to Rule 12(b)(6), arguing that Plaintiff has failed to state a claim upon which relief can be granted because he had not "establish[ed] that he was excluded from any service, program, or activity because of his disability." (D.E. 13-1 at 1.) All briefing for the State Defendants' Motion (D.E. 14, 15, 16) and Jersey City's Motion (D.E. 18, 19) was timely filed.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion, of an entitlement to relief"). In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (discussing the *Iqbal* standard).

## III. DISCUSSION

### A. State Defendants' Motion

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,[2] or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the RA states that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity[3] receiving Federal financial assistance." 29 U.S.C. § 794(a). Accordingly, "[t]he same standards govern both the RA and the ADA claims." *See S.H. ex rel. Durrell v. Lower Merion*

---

[2] The ADA defines "public entity" as "any State or local government" and includes "any department, agency, special purpose district, or other instrumentality of a State ... or local government." 42 U.S.C. § 12131(1)(A)–(B).

[3] The RA defines "program or activity" as the operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government." 29 U.S.C. § 794(b)(1).

*Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013). To state a claim under either act, Plaintiff must prove that (1) he is an individual with a disability as defined by the statutes; (2) he is otherwise qualified to participate in the program at issue; and (3) he was precluded from participating in the program or receiving its services or benefits because of his disability. *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (citing *Chambers ex rel. Chambers*, 587 F.3d 176, 189 (3d Cir.)).

First, as discussed in detail in *Ali v. City of Newark*, a city Municipal Court "is not a 'program' provided by the State Defendants under New Jersey state law." Civ. No. 15-8374, 2018 WL 2175770, at *4 (D.N.J. May 11, 2018). The crux of Plaintiff's Complaint asserts that the Municipal Court repeatedly failed to provide him with an ASL interpreter.[4] (*See* Compl. ¶¶ 2, 15, 17–22, 25–26, 32.) As the State Defendants do not operate the Municipal Court, employ the Municipal Court's staff, or manage its interpreter services, they cannot be held liable under the ADA or RA for these programs' failures. *See Ali*, 2018 WL 2175770, at *4 ("This is because State Defendants do not establish, fund, provide resources to, maintain, or direct the day-to-day operations of municipal courts in New Jersey, like the [Jersey City] Municipal Court."). Instead, municipal courts are "established, maintained, and directed solely by the municipality." N.J.S.A. 2B:12–1. For these reasons, the Municipal Court's programs and policies are local, rather than

---

[4] On March 1, 2021, Jersey City filed a letter asking this Court to refrain from dismissing the State Defendants, alleging that the Complaint "makes several allegations against employees of the Administrative Office of the Courts" and the MVC. (D.E. 15 at 2.) However, as noted by Plaintiff's counsel, "the City mistakenly alleges that the 'Administrative Office of the Court' referenced" in the Complaint "is 'the Administrative Office of the Court, which is an agency of the State,'" when that term actually refers to the "Municipal Court's administrative office." (D.E. 18 at 9.)

As for the reference to the MVC, two paragraphs in the Complaint, (Compl. ¶¶ 29, 30), describe an employee who "informed plaintiff that his license was still suspended and that he was required to pay a restoration fee," (D.E. 15 at 3). These paragraphs do not allege that Plaintiff asked for an interpreter at the MVC or suggest that the agency committed any illegal act. (Compl. ¶¶ 29, 30.) Nor do any of the specific enumerated causes of action mention the MVC. (*Id.* ¶¶ 40-70.) Plaintiff's plausible ADA and RA claims are based on the Municipal Court's failure to provide him with an ASL interpreter as an accommodation—not his frustrating trip to the MVC. (*Id.* ¶¶ 2 (discussing "repeated requests for an interpreter"), 32 ("Despite Plaintiff's repeated requests to arrange an ASL interpreter in advance of the scheduled hearings, the Municipal Court's employee declined to take steps to provide the requested accommodation."), 37 ("Defendants' policy – whether formal or informal – of not arranging an interpreter prior to the judicial proceeding results in a failure of their legal duty to make timely, reasonable accommodations.").)

state-run, under the ADA and RA. To the extent that there is any overlap between state and local entities in running the Municipal Court, the ASL interpreter services that Plaintiff was denied are clearly provided locally.[5] *Ali*, 2018 WL 2175770, at *5 (collecting cases); *Chisholm v. McManimon*, 275 F.3d 315, 324 (3d Cir. 2001).

Second, the *Ali* opinion directly addressed the question of whether New Jersey municipal court employees are state employees, answering it in the negative. *Ali*, 2018 WL 2175770, at *5; *see also* N.J.S.A. 2B: 12–10(a) ("A county or municipality shall provide for an administrator and other necessary employees for the municipal court and for their compensation."). Nothing in the parties' briefing suggests a reason to depart from *Ali*'s conclusion on this point, which is further reinforced by state law. (*See also* Compl. ¶ 6 (acknowledging that "the City of Jersey City employs the administrative staff of the [Jersey City[6]] Municipal Court").) Therefore, the claims raised against the State Defendants must be dismissed.

### B. Jersey City's Motion

As for Jersey City's Motion, Plaintiff's claims are sufficient to survive dismissal. The Complaint adequately alleges that Plaintiff is an individual with a disability, was otherwise

---

[5] Despite being represented by an attorney who took part in the *Ali* case and, seemingly, chose not to appeal its outcome, Plaintiff spills much ink arguing that the *Ali* court erred. (*See*, *e.g.*, D.E. 14 at 2.) Plaintiff relies on various pre-*Ali* cases to argue that the Municipal Court somehow transcends its funding and statutory origin to become a state entity. (*Id*. at 3-6 (discussing, *inter alia*, the Municipal Court's placement in the state judicial system and issues of immunity, judicial independence, and control).) However, the *Ali* court considered similar arguments and rejected them, stating that it was "not convinced" that "the State Defendants retain some control" simply "because the municipal courts are part of the state court system," and concluding that access to the "Municipal Court is not a program provided by State Defendants." *Ali*, 2018 WL 2175770, at *4. This Court agrees with the *Ali* court's reasoning.

Plaintiff also makes statutory arguments regarding the RA and ADA's language. However, the fact that the statutes provide for either state or local liability is irrelevant to whether the State Defendants are properly named in this case. (D.E. 14 at 8.) The statutes do not transform the Municipal Court into a state entity—that question has already been decided by issues of funding, state and local law, and legal precedent.

[6] This Court assumes that any references to the Newark Municipal Court are typos. (*See* Compl. ¶ 6.)

qualified to participate in a public program, and was denied the benefits of that program or was discriminated against because of his disability. *See Chambers*, 587 F.3d at 189.

Despite Jersey City's suggestions to the contrary, Plaintiff has plausibly alleged that he suffered a cognizable wrong under the ADA, RA, and NJLAD[7], even though he may not have been wholly "excluded from" the Municipal Court. (*See* D.E. 13-1 at 8, 12, 13 (seeming to argue that Plaintiff was not wronged because he was never outright "denied" an interpreter), 14 (seeming to defend the use of handwritten notes as adequate forms of communication to individuals with hearing impairments), 15 (suggesting that Plaintiff was always treated with "courtesy").) Here, the Complaint plausibly alleges that Plaintiff was subjected to "shame, anxiety, frustration, emotional distress, fear," "humiliat[ion]," and "discrimination" due to the Municipal Court's failures to provide an interpreter. (Compl. ¶¶ 37–38.) In addition, the Complaint alleges that Plaintiff endured undue delay due to the Municipal Court's "failure . . . to make timely, reasonable accommodations." (*Id*.) Accepting the version of events articulated in the Complaint as true, Plaintiff clearly states a plausible claim to relief, by asserting that he was not provided the same access to the Municipal Court as an individual without a hearing impairment.

**CONCLUSION**

The State Defendants' Motion to Dismiss (D.E. 11) is **GRANTED**, and Jersey City's Motion to Dismiss (D.E. 13) is **DENIED**. An appropriate Order follows.

                                           /s/ Susan D. Wigenton
                                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
       Leda D. Wettre, U.S.M.J.

---

[7] Title II's principles, which are "interpreted consistently" as to the ADA and RA, "apply equally to … NJLAD claims." *Chin v. Rutgers*, 697 F. App'x 751, 754 n.3 (3d Cir. 2017) (citing *Chisolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001)).